# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CARL BARRETT,**

> **Plaintiff,**

**v.**                                          **Case No. 20-CV-508**

**TREVOR CHAMPAN and**
**BRADLEY WENZALAFF,**

> **Defendants.**

---

## DECISION AND ORDER

---

Plaintiff Carl Barrett, who is representing himself and confined at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Barrett alleges that the defendants violated his constitutional rights when they failed to send him to the Health Services Unit (HSU) when he reported flu-like symptoms. The defendants filed a motion for summary judgment (ECF No. 29). The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 11, 21.)

### 1. Facts

*1.1 Parties*

At all times relevant, plaintiff Carl Barrett was incarcerated at Green Bay Correctional Institution. (ECF No. 40, ¶ 1.) Defendant Trevor Chapman was a sergeant at Green Bay, and defendant Bradley Wenzlaff was a correctional officer at Green Bay. (*Id.*, ¶¶ 2-3.) In their respective roles, their primary objective was to provide security for the inmates and staff. (ECF No. 34, ¶¶ 4-5.)

*1.2 Green Bay's Process for Reporting Inmate Medical Issues*

When an inmate experiences a medical issue that is not an emergency, security staff are supposed to direct them to fill out a Health Services Request (HSR). (ECF No. 34, ¶¶ 6-7.) The HSU staff then reviews the HSR and determines how best to respond. (*Id.*, ¶ 15.) It is undisputed that it can take up to one day for HSU to receive an HSR. (ECF No. 43, ¶ 7.)

In the event of an emergency medical situation, a Sergeant should contact the HSU. (*Id.*, ¶ 8.) Emergency situations are defined as heart attacks, active bleeding and "other situations where an inmate's health and safety are seriously at risk" if the inmate doesn't receive immediate medical attention. (*Id.*, ¶ 9.)

*1.3 The Events of February 10, 2020*

On February 10, 2020, at approximately 10:30 a.m., Barrett, who had been mildly ill for the last four days, began experiencing headaches, fever, chills, congestion, coughing, and vomiting. (ECF No. 43, ¶ 5.) He submitted an HSR to the HSU around 1:00 p.m. (*Id.*, ¶ 6.) In his request he stated, "I'm having severe headaches, with vomiting—I'm also having feverish chills, stuffy & runny nose, persistent chronic cough that's hurting my throat & chest." (*Id.*)

Barrett states he vomited again around 2:00 p.m., and his vomit contained blood. (ECF No. 43, ¶ 11.) At that point, his cellmate Kenneth Kennedy stopped another inmate, Eric Judon, and asked him to tell security staff that Barrett was vomiting up blood, was dizzy, and needed medical assistance. (ECF No. 39-1 at 10, ¶

3.[1]) Judon states that, although he informed Wenzlaff and Chapman of Barrett's circumstances, they refused to call the HSU. (ECF No. 39-1 at 12, ¶¶ 3-4.) It is undisputed that Chapman at that point confirmed that Barrett had already submitted an HSR to the HSU. (ECF No. 40, ¶ 20.)

The defendants dispute that they refused to call the HSU. Wenzlaff asserts that between 2:00 p.m. and 3:00 p.m. he spoke with Barrett at his cell, at which point Barrett told him he was not feeling well. (ECF No. 34, ¶¶ 27-28.) According to Wenzlaff, although Barrett did not appear to be in need of emergency medical attention, Wenzlaff told Barrett he would call the HSU. (*Id.*, ¶¶ 28-29.) Wenzlaff also told Chapman that he was going to call the HSU. (*Id.*, ¶ 30.) Wenzlaff does not recall who he spoke with in the HSU but remembers that they told him to have Barrett submit an HSR. (*Id.*, ¶ 32.) Wenzlaff then told Barrett that the HSU told him he needed to submit an HSR. (*Id.*, ¶ 34.)

Barrett states that he did not speak with or see Wenzlaff prior to dinner on February 10, 2020. (ECF No. 40, ¶ 27.) It is undisputed that the HSU call logs from that day contain no notation that Wenzlaff called the HSU. (ECF No. 43, ¶ 28.)

It is also undisputed that Chapman checked on Barrett sometime before 4:00 p.m. that same day. (ECF No. 43, ¶ 19.) Barrett states he told Chapman he was in

---

[1] The defendants in their response to Barrett's proposed findings of fact state that the court should disregard statements from Kennedy and Judon because Barrett failed to file any declarations. (*See* ECF No. 43, ¶ 13.) However, Barrett did submit declarations from both Kennedy and Judon as attachments to his declaration and resubmitted them after the defendants filed their response to Barrett's proposed findings of fact, so the court will consider them where appropriate. (*See* ECF No. 39-1 at 10-13; ECF Nos. 45, 46.)

3

pain, his vomit contained blood, and he was feeling dizzy. (*Id.*) Chapman states that Barrett simply told him he was not feeling well and did not mention that he vomited up blood. (*Id.*) According to Chapman, Barrett was not in any obvious distress. (*Id.*)

At 5:20 p.m., Barrett left his cell to go to dinner. (ECF No. 43, ¶ 21.) Barrett states that the reason he went to dinner was to find a lieutenant or captain to tell that he needed to go to the HSU, but there weren't any present at dinner. (*Id.*, ¶ 22.) Once at dinner, Barrett vomited and passed out on the floor. (*Id.*, ¶ 23.) It is undisputed that Wenzlaff then immediately escorted Barrett to the HSU and that Barrett was able to walk on his own up the stairs to the HSU. (ECF No. 40, ¶¶ 45, 48.) It is also undisputed that Chapman was not present at dinner. (*Id.*, ¶ 46.)

Barrett was then examined in the HSU, where it is undisputed that HSU staff determined he had flu-like symptoms. (ECF No. 43, ¶ 25.) Barret was placed in a two-day quarantine to prevent the spread of his flu and advised to continue taking the Mucinex and Tylenol he had been taking for the past four days. (*Id.*; ECF No. 39-1 at 8.) Barrett was also advised to hydrate, rest, and practice good hand hygiene. (*Id.*) The HSU staff noted that Barret complained of headaches, cough, chest pain from coughing, chills, dizziness, fatigue, nausea, and vomiting. (ECF No. 39-1 at 6.) Barrett's medical records also indicate that HSU staff noticed "blood-tinged, brown" sputum. (*Id.* at 7.)

The next day, on February 11, 2020, Barrett had a follow-up appointment with the HSU staff. (ECF No. 43, ¶ 49.) He again complained of chest pain, coughing up brown and bloody mucus, difficulty breathing, fever and chills. (*Id.*)  He was treated

4

with Tylenol. (ECF No. 39-1 at 8.) Barrett had another follow-up appointment on February 15, 2021, where he complained that he still had a cough and a sore throat. (ECF No. 40, ¶ 50.) He was instructed to continue hydrating, resting, and practicing good hand hygiene. (*Id.*) That appears to be the last time Barrett was treated for this illness.

## 2. Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his

5

pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

### 3. Analysis

Barrett claims that the defendants violated his Eighth Amendment rights when they failed to treat his symptoms as a medical emergency and take him to the HSU immediately upon learning about his condition. A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

"A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Case 2:20-cv-00508-WED   Filed 10/01/21   Page 6 of 11   Document 50

Taking the facts in the light most favorable to Barret, Barrett suffered an objectively serious medical condition because his vomit contained blood. While "vomiting, in and of itself, is not an uncommon result of being mildly ill," it may rise to the level of an objectively serious medical condition where there are "other circumstances (e.g., vomiting continuously for a long period of time, having blood in one's vomit, or the like)." *Gayton*, 593 F.3d at 621.

However, just because Barrett's illness was an objectively serious medical condition that required medical attention does not mean it was so emergent a situation that it required *immediate* medical attention. Whether Barrett's illness was an emergency situation has bearing on the second part of the inquiry—whether the defendants were deliberately indifferent. If it was an emergency situation, then, taking the facts in the light most favorable to Barrett, when the defendants were notified by Judon that Barrett was vomiting and they failed to immediately notify the HSU, that would rise to the level of a constitutional violation. If Barrett's illness was not an emergency situation, then the defendants were entitled to rely on the established HSU procedure, requiring Barrett to file an HSR and leaving it to the HSU staff to decide the next course of action.

Even when considering the facts in the light most favorable to Barrett, no reasonable factfinder could conclude that between 2:00 p.m., when Barrett first complained of symptoms, and dinnertime on February 10, 2020, Barrett was experiencing a medical emergency. There is no evidence on the record that, until he passed out, the defendants were aware Barrett was experiencing other symptoms that

7

suggested he was in need of immediate medical attention. Once he passed out, Wenzlaff immediately escorted him to the HSU. The HSU staff did not treat his situation as an emergency, further supporting the conclusion that the defendants had no reason to know Barrett was experiencing a medical emergency. Moreover, it is undisputed that Chapman was not even present when Barrett passed out.

Thus, even if as Barrett alleges Chapman and Wenzlaff ignored Judon's request on Barrett's behalf that they call the HSU to provide immediate medical care, they were not deliberately indifferent in failing to take him directly to the HSU. Because Barrett was not experiencing a medical emergency, Chapman and Wenzlaff were entitled to rely on Green Bay's established non-emergency procedure—requiring Barrett submit a HSR to be seen by the HSU and then deferring to the HSU staff as to the next steps. The process creates a division of responsibility between the security staff and the medical staff, and "people who stay within their roles . . . cannot be hit with damages under § 1983." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Even if a question of fact existed as to whether Barrett was experiencing a medical emergency, it would be immaterial because Barrett has failed to demonstrate that a reasonable factfinder could conclude that he suffered a recoverable harm. "In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'" *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe*, 631 F.3d at 864). A plaintiff must "show that he experienced . . .cognizable harm." *Lord v. Beahm,* 952 F.3d 902, 905 (7th Cir. 2020).

8

Barret has not shown that he experienced cognizable harm. When taking the facts in the light most favorable to Barrett, had the defendants called the HSU after Judon told them of Barrett's condition at around 2:30 p.m., there is nothing in the record to suggest Barrett would have received care different than the care he received after he passed out at dinner—a recommendation that he continue the over-the-counter medications, rest, and hydration. Nor is there is evidence that the three-hour delay in treatment caused Barrett's situation to worsen or that he was prevented from getting care he otherwise would have received.

No reasonable factfinder, then, could conclude that the defendants were deliberately indifferent in failing to call the HSU between 2:00 p.m. and dinnertime. Barrett was not experiencing a medical emergency, and the defendants were entitled to rely on Green Bay's established process for situations that did not present an emergency, which they did. Even if a question of fact existed as to whether Barret was experiencing a medical emergency, there is no evidence that Barrett suffered any sort of cognizable harm.

### 4. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is granted. The case is dismissed.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 29) is **GRANTED**.

9

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 1st day of October, 2021.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge

11